**CLEARY GIACOBBE ALFIERI JACOBS LLC**
169 Ramapo Valley Road
Upper Level 105
Oakland, NJ  07436
(973)845-6700
Matthew Giacobbe, Esq.
Attorneys for Defendant/Third Party Plaintiff, Malanga's Automotive

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HONDA LEASE TRUST, | : |
| Plaintiff | : |
| | CIVIL ACTION NO.  2:22-cv-04862 |
| vs. | : |
| BUTLER TOWNSHIP and MALANGA'S AUTOMOTIVE, | : |
| | **NOTICE OF REMOVAL** |
| | : |
| Defendants | : |
| and | : |
| MALANGA'S AUTOMOTIVE, | : |
| Defendant/Third-Party Plaintiff | : |
| vs. | : |
| VINCENT MEDINA, | : |
| Third-Party Defendant. | : |
| | : |
| | : |

TO THE HONORABLE JUDGES OF THE UNITED DISTRICT COURT FOR THE

DISTRICT OF NEW JERSEY:

Cleary, Giacobbe, Alfieri, Jacobs LLC, counsel for the defendant/third-party plaintiff, Malanga's Automotive ("Malanga"), in the above-captioned matter, hereby file this Notice of Removal to remove an action currently pending in the Superior Court of New Jersey to the United States District Court for the District of New Jersey.

As grounds for removal, Defendants state as follows:

1.      The plaintiff, Honda Lease Trust ("Plaintiff"), initiated this action in the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-002613-21 by way of complaint entitled Honda Lease Trust v. Malanga's Automotive. and filed on December 8, 2021 (the "Complaint") a copy of which is annexed hereto as **Exhibit A**.

2.      Thereafter, on July 8, 2022, Plaintiff was granted leave to file an Amended Complaint.

3.      Plaintiff filed an Amended Complaint, adding Butler Township as a Defendant and alleging additional causes of action on July 14, 2022 (the "Amended Complaint") a copy of which is annexed hereto as **Exhibit B**.

4.      Malanga first received a copy of the Amended Complaint on July 14, 2022 via eCourts and is filing this Notice of Removal within 30 days thereof.

5.      This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. §1331 and is one which may be removed to this Court by Defendants pursuant to 28 U.S.C. §1441(a) in that Plaintiff's Amended Complaint asserts claims arising under the Constitution, laws or treaties of the United States.  Specifically, the Complaint invokes due process rights under the Federal Constitution, 42 U.S.C. §1983.  *See* Amended Complaint, Fourth Count.

6.      All of the defendants in this matter consent to removal.

7.      Concurrent with the filing of this Notice of Removal, Malanga is filing a copy with the Clerk, Superior Court of New Jersey, Law Division, Morris County and providing a copy hereof to: (i) Plaintiff's counsel, Nicholas Duston, Esq.; and (ii) Catherine J. Flynn, Esq. of Flynn Watts LLC, counsel for co-defendants, Borough of Butler.

8.      Defendants do not waive any defenses by filing this Notice of Removal.

WHEREFORE, Defendants hereby give notice that the above-captioned case now pending in the Superior Court of New Jersey, Law Division, Hunterdon County is removed therefrom to the United States District Court for the District of New Jersey where it shall proceed as an action originally commenced therein.

CLEARY GIACOBBE ALFIERI JACOBS LLC
*Attorneys for Defendant/Third-Party Plaintiff*


By:     _s/Matthew J. Giacobbe, Esq._
        Matthew J. Giacobbe, Esq.

Dated: August 2, 2022

**CERTIFICATION OF SERVICE**

I hereby certify that on this date I caused a true copy of the foregoing Notice of Removal to be served on all parties of record via overnight delivery to:

Nicholas Duston, Esq.
Norris McLaughlin, PA
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
*Attorney for Plaintiff, Honda Lease Trust*

Catherine J. Flynn, Esq.
Flynn Watts, LLC
1 Gatehall Drive
Parsippany, New Jersey 07054
*Attorney for Co-Defendant, Borough of Butler*

I further certify that on this date I caused a copy of the Notice of Removal to be delivered for filing via overnight delivery to:

Clerk, Superior Court of New Jersey
Morris County Courthouse
56 Washington Street
Morristown, New Jersey 07960

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

CLEARY GIACOBBE ALFIERI JACOBS LLC
*Attorneys for Defendant/Third-Party Plaintiff*

By:    *s/Matthew J. Giacobbe, Esq.*
Matthew J. Giacobbe, Esq.

Dated: August 2, 2022

4

# EXHIBIT A

Nicholas A. Duston, Esq. (ID#103562014)
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
*Attorneys for Plaintiff*

|  |  |
|---|---|
| HONDA LEASE TRUST,<br><br>   Plaintiff,<br><br>   v.<br><br>MALANGA'S AUTOMOTIVE,<br><br>   Defendant. | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION: MORRIS COUNTY**<br><br>DOCKET NO.<br><br>**COMPLAINT**<br><br>Civil Action |

Plaintiff, Honda Lease Trust ("Plaintiff" or "HLT"), by way of Complaint against Defendant, Malanga's Automotive ("MA"), says:

## THE PARTIES

1.   HLT is a foreign business entity authorized to do business in New Jersey.

2.   Upon information and belief, MA is a New Jersey business entity with a principal place of business located at 39 Hamburg Turnpike, Riverdale, New Jersey 07457.

## FACTS RELEVANT TO ALL COUNTS

3.   Prior to the facts relevant to this action, non-party Vincent Medina (the "Customer") entered into a lease relating to a 2018 Honda Civic bearing VIN SHHFK7H46JU418889 ("the Vehicle").

4.   The lease was thereafter assigned to HLT, who also holds title to the Vehicle.

5.   The Customer has defaulted on Customer's obligation to make payment under the lease and has violated other non-monetary provisions of the Lease by virtue of the facts at issue in this litigation.  Therefore, pursuant to the terms of the lease, HLT has become entitled to immediate possession of the Vehicle.

6.      On or about June 23, 2021, HLT became aware that MA had possession of the Vehicle.

7.      HLT immediately contacted MA to recover the Vehicle.

8.      MA refused to turn over possession of the Vehicle to HLT until HLT paid MA for outstanding towing, repair and/or storage fees relating to the Vehicle.

9.      MA never notified HLT that MA had possession of the Vehicle or that MA intended to perform work on the Vehicle or that MA intended to charge storage fees that continued to accrue daily without HLT's knowledge.

10.     MA never provided a written estimate to HLT regarding the alleged cost of repairs, and never provided HLT any receipt or invoice relating to those alleged repairs.

11.     MA never obtained authorization, written, verbal, or otherwise, from HLT regarding the alleged repairs or alleged storage fees.

12.     HLT is not responsible for any costs incurred by the Customer related to the towing, repair and/or storage of the Vehicle, because of MA failure to provide the above-referenced information.

13.     MA, upon information and belief, did not perform any repairs on the Vehicle.  In the event MA did perform repairs, it was without HLT's knowledge or consent.

14.     MA is, at best, a non-possessory lienholder who has no rights, possessory or otherwise, against HLT.

15.     On or about October 29, 2021, counsel for HLT transmitted a letter to MA again demanding MA provide HLT with immediate and unconditional possession of the Vehicle without payment.

16.     HLT remains entitled to immediate and unconditional possession of the Vehicle.

17. HLT is ready, willing and able to retake possession of the Vehicle.

18. MA improperly refused, and continues to improperly refuse as of the date of this pleading, to turn over possession of the Vehicle to HLT.

## FIRST COUNT
### (Replevin)

19. HLT incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

20. HLT is the owner of the Vehicle, which it leased to Customer.

21. Customer breached the lease, entitling HLT to immediate and unconditional possession of the Vehicle.

22. HLT has demanded that MA surrender the Vehicle to HLT's possession.

23. MA has refused, and continues to refuse, to surrender the Vehicle to HLT's possession.

24. HLT is entitled to an order requiring MA to immediately turn over possession of the Vehicle to HLT.

**WHEREFORE**, HLT prays for judgment against Defendant MA for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## SECOND COUNT
### (Conversion)

25. HLT incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

26. HLT owns the Vehicle, and in accordance with its rights under its lease with Customer has become entitled to immediate possession of the Vehicle.

27.     MA has refused, and continues to refuse, to surrender possession of the Vehicle to HLT.

28.     By these actions, MA has purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with HLT's rights to possession of the Vehicle.

29.     HLT has suffered, and continues to suffer, damages as a result of MA actions.

**WHEREFORE**, HLT prays for judgment against Defendant MA for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## THIRD COUNT
### (Tortious Interference)

30.     HLT incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

31.     MA wrongful actions as set forth above constitute a knowing and intentional tortious interference with HLT's contractual relations and/or prospective economic advantage with respect to the Vehicle.

32.     HLT has suffered, and continues to suffer, damages as a result of MA actions.

**WHEREFORE**, HLT prays for judgment against Defendant MA for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## FOURTH COUNT
**(Unconscionable Commercial Practices and/or per se administrative regulation violation of the Consumer Fraud Act, N.J.S.A., 56:8-1, *et seq*. and Administrative Rules of the Division of Consumer Affairs, § 13:45A-26C.2—Deceptive Practices for Automotive Repairs)**

33.     HLT incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

34. Violation of any of the Administrative Rules of the Division of Consumer Affairs constitutes a violation of the New Jersey Consumer Fraud Act ("CFA").

35. Administrative Rules of the Division of Consumer Affairs provides that an automotive repair dealer may not commence work without obtaining specific written authorization from the customer, may not commence work without providing written estimates meeting certain criteria, must provide the customer with certain receipts, invoices, and other paperwork, and imposing other specific requirements. See N.J.A.C. § 13:45A-26C.2.

36. The same section prohibits "making or authorizing in any manner or by any means whatever any statement, written or oral, which is untrue or misleading, and which is known. or by which the exercise of reasonable care should be known, to be untrue or misleading." Id.

37. Attempts by MA to hold HLT responsible for alleged amounts due to MA relating to the Vehicle without having obtained appropriate authorization, without having provided the appropriate written estimates, without providing the appropriate receipts, invoices and other paperwork, and without otherwise complying with N.J.A.C. § 13:45A-26C.2 resulted in MA committing various *per se* violations of the CFA.

38. MA statements to HLT representatives regarding HLT's liability to MA constitute per se violations of the same provision, because it is false as a matter of law that HLT would be liable for the monies demanded by MA.

39. MA conduct resulted in per se violations of the CFA, for which MA is liable under CFA, N.J.S.A. 56:8-1, et seq.

40. Attempts by MA to hold HLT responsible for the repairs, and MA withholding of possession of the Vehicle from HLT, constituted an unconscionable commercial practice which violated other provisions of the CFA.

41.     HLT constitutes a consumer with standing to raise these claims under the CFA.

42.     MA violations of the CFA caused an ascertainable loss to HLT for which MA is liable, namely, lost value of the vehicle, lost income stream from lease payments of the vehicle, lost use of the vehicle, and other damages.

**WHEREFORE**, HLT pray for judgement against Defendant, MA, for actual damages, consequential damages, punitive damages, fees and costs of suit, and pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-19, treble damages, counsel fees, interest and costs of suit, and for such other and further relief as the Court deems just and proper.

**NORRIS MCLAUGHLIN, P.A.**
*Attorneys for Plaintiff*

By: */s/ Nicholas A. Duston*
        NICHOLAS A. DUSTON

DATED: December 8, 2021

**DESIGNATION OF TRIAL COUNSEL**

PLEASE TAKE NOTICE that pursuant to R. 4:25-4, the undersigned is hereby designated as trial counsel.

By: _/s/ Nicholas A. Duston_
NICHOLAS A. DUSTON

DATED: December 8, 2021

**CERTIFICATION**

Pursuant to R. 4:5-1, I hereby certify that, to my knowledge, the matter in controversy is not the subject of any other action in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. I further certify that, to my knowledge, no other party should be joined in the within action.

I further certify that Confidential Personal Identifies have been redacted from documents now submitted to the Court and will be redacted from all documents in the future, in accordance with R. 1:38-7(b).

**NORRIS MCLAUGHLIN, P.A.**
*Attorneys for Plaintiff*

By: _/s/ Nicholas A. Duston_
NICHOLAS A. DUSTON

DATED: December 8, 2021

# EXHIBIT B

**Nicholas A. Duston, Esq. (ID#103562014)**
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
Telephone: 908-722-0700
Direct:  908-252-4208
Facsimile: 908-722-0755
*Attorneys for Plaintiff Honda Lease Trust*

|  |  |
|---|---|
| HONDA LEASE TRUST, <br><br> Plaintiff, <br><br> v. <br><br> BUTLER TOWNSHIP and MALANGA'S AUTOMOTIVE, <br><br> Defendants, <br> and <br> MALANGA'S AUTOMOTIVE, <br><br> Defendant/Third-Party Plaintiff, <br><br> v. <br><br> VINCENT MEDINA, <br><br> Third-Party Defendant. | **SUPERIOR COURT OF NEW JERSEY** <br> **LAW DIVISION: MORRIS COUNTY** <br><br> DOCKET NO. MRS-L-002613-21 <br><br> <u>CIVIL ACTION</u> <br><br> **AMENDED COMPLAINT** |

Plaintiff, Honda Lease Trust ("Plaintiff" or "HLT"), by way of Amended Complaint against Defendants Malanga's Automotive ("MA") and Butler Township ("Butler") states the following:

<u>**THE PARTIES**</u>

1.      HLT is a foreign business entity authorized to do business in New Jersey.

2.      Upon information and belief, MA is a New Jersey business entity with a principal place of business located at 39 Hamburg Turnpike, Riverdale, New Jersey 07457.

3.      Upon information and belief, Butler is a New Jersey municipal entity located within Morris County.

## FACTS RELEVANT TO ALL COUNTS

4.      Prior to the facts relevant to this action, non-party Vincent Medina (the "Customer") entered into a lease relating to a 2018 Honda Civic bearing VIN SHHFK7H46JU418889 ("the Vehicle").

5.      The lease was thereafter assigned to HLT, who also holds title to the Vehicle.

6.      The Customer then defaulted on his obligation to make payment under the lease and violated other non-monetary provisions of the Lease by virtue of the facts at issue in this litigation.   Therefore, pursuant to the terms of the lease, HLT has become entitled to immediate possession of the Vehicle.

7.      On July 20, 2020, the Butler Police Department, acting in the regular course of its law enforcement activities, requested that MA tow the Vehicle from the scene of an accident.

8.      After towing the Vehicle MA retained custody of the Vehicle thereafter.

9.      Butler failed to take any steps to identify or notify any parties with interests in the Vehicle, such as HLT, that it had instructed MA to take custody of the Vehicle.

10.     No party took steps to notify HLT of MA's possession of the Vehicle until June 23, 2021–Three-Hundred and Thirty-Nine (339) days after the fact–at which time HLT first became aware that MA had possession of the Vehicle.

11.     Specifically, on or about June 23, 2021, HLT became aware that MA had possession of the Vehicle.

12.     HLT immediately contacted MA to recover the Vehicle.

13.     MA refused to turn over possession of the Vehicle to HLT until HLT paid MA for outstanding towing, repair and/or storage fees relating to the Vehicle.

14.     MA never notified HLT that MA had possession of the Vehicle or that MA intended to perform work on the Vehicle or that MA intended to charge storage fees that continued to accrue daily without HLT's knowledge.

15.     MA never provided a written estimate to HLT regarding the alleged cost of repairs, and never provided HLT any receipt or invoice relating to those alleged repairs.

16.     MA never obtained authorization, written, verbal, or otherwise, from HLT regarding the alleged repairs or alleged storage fees.

17.     HLT is not responsible for any costs incurred by the Customer related to the towing, repair and/or storage of the Vehicle, because of MA failure to provide the above-referenced information.

18.     MA, upon information and belief, did not perform any repairs on the Vehicle.  In the event MA did perform repairs, it was without HLT's knowledge or consent.

19.     MA is, at best, a non-possessory lienholder who has no rights, possessory or otherwise, against HLT.

20.     On or about October 29, 2021, counsel for HLT transmitted a letter to MA again demanding MA provide HLT with immediate and unconditional possession of the Vehicle without payment.

21.     HLT remains entitled to immediate and unconditional possession of the Vehicle.

22.     HLT is ready, willing and able to retake possession of the Vehicle.

23.     MA improperly refused, and continues to improperly refuse as of the date of this pleading, to turn over possession of the Vehicle to HLT.

**FIRST COUNT**
(*Replevin*)
*(as against MA)*

24.     HLT incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

25.     HLT is the owner of the Vehicle, which it leased to Customer.

26.     Customer breached the lease, entitling HLT to immediate and unconditional possession of the Vehicle.

27.     HLT has demanded that MA surrender the Vehicle to HLT's possession.

28.     MA has refused, and continues to refuse, to surrender the Vehicle to HLT's possession.

29.     HLT is entitled to an order requiring MA to immediately turn over possession of the Vehicle to HLT.

**WHEREFORE**, HLT prays for judgment against Defendant MA for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

**SECOND COUNT**
(*Conversion*)
*(as against MA)*

30.     HLT incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

31.     HLT owns the Vehicle, and in accordance with its rights under its lease with Customer has become entitled to immediate possession of the Vehicle.

32.     MA has refused, and continues to refuse, to surrender possession of the Vehicle to HLT.

33.     By these actions, MA has purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with HLT's rights to possession of the Vehicle.

34.     HLT has suffered, and continues to suffer, damages as a result of MA actions.

**WHEREFORE**, HLT prays for judgment against Defendant MA for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## FOURTH COUNT
### (*42 U.S.C. § 1983*)
### (*Deprivation of Property Without Due Process of Law*)
### (*Deprivation by Unreasonable Seizure*)
### (*Taking without Just Compensation*)
### (*as against all defendants*)

35.     HLT incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

36.     HLT has a protectible property interest in the Vehicle.

37.     MA meaningfully interfered with that property interest in the Vehicle.

38.     MA deprived HLT of its property interest in the Vehicle by holding it in the face of HLT's demands.

39.     MA attempted to deprive HLT of other property—namely, its money—by conditioning release of the Vehicle on HLT's payment of fees.

40.     MA deprived HLT of its property under color of law, because MA operated as a willful participant in joint activity with the State or its agents, and/or because MA had been delegated a public function by the state, namely, seizure and detention of the Vehicle.

41.     MA acted under color of law, because without the mantle of police authority to possess the Vehicle, MA would be committing theft.  N.J.S.A. § 2C:20-6 ("a person who comes

into control of property of another that he knows ha[s] been lost [or] mislaid . . . is guilty of theft if. . . . he converts the property to his own use.").

42.     Numerous federal courts have held that towing contractors, like MA, act under color of law when they tow and detain vehicles, like the Vehicle, at the behest of municipal police.

43.     MA's assertion of a lien on the Vehicle for towing and storage charges constitutes a deprivation of HLT's protectible property interests.

44.     A deprivation, even temporary, is a deprivation nonetheless and triggered MA's obligation to provide HLT with due process of law under the Federal Constitution.

45.     Due process requires MA to conduct a hearing within a reasonable time of seizure of property where at any person with an interest in that property can challenge the propriety of the seizure and, separately, the propriety of the continued detention of the property.

46.     MA did not provide HLT with constitutionally adequate notice of a procedure whereat HLT could challenge MA's seizure of the Vehicle or MA's detention of the Vehicle pending this forfeiture action.

47.     MA did not, in fact, provide any process whereby HLT could assert its property interests and challenge MA's seizure of the Vehicle or its detention of the Vehicle pending this forfeiture action.

48.     MA does not have any procedures for providing the required hearing (or notice of the hearing) before a neutral decisionmaker whereat any holder of an interest in a vehicle seized for forfeiture may challenge the propriety of the seizure or the propriety of MA's continued detention of vehicles.

49.     MA's regular custom, policy and practice is to hold all seized motor vehicles without providing such procedures (or notice of these procedures) to all persons holding an interest in the seized vehicle.

50.     Because of the foregoing, MA deprived HLT of its right to be free from deprivation of its property without due process of law, and to be free from unreasonable seizures, as protected by the United States' Constitution and/or the New Jersey constitution.

51.     Butler has a policy, custom and/or practice of delegating an essential government function to MA, i.e., the clearing of vehicles from the roadway for various law enforcement purposes and the storing of those vehicles until claimed by persons with preexisting property interests at the behest of the Butler police.

52.     MA has a policy, custom and/or practice of performing a portion of Butler's public functions, i.e., the towing and storage of vehicles taken into custody at the direction of Butler's policy, and in doing so without receiving monetary consideration from Butler.  Instead, MA accepts as its sole consideration for the services it renders the cloak of Butler's authority to possess and detain vehicles against those with pre-existing property interests—which would otherwise not be lawful—while demanding that those persons provide compensation to MA for the services MA rendered to Butler at its behest.

53.     In this way, Butler and MA are each willful participants in a joint enterprise wherein Butler obtains MA's services without payment of monetary consideration, and MA is cloaked with Butler's governmental authority to possess vehicles and hold them from others with pre-existing property rights in those vehicles.

54.     HLT has, and at all relevant times has had, a protected property interest in the Vehicle.

55. Butler acted under color of law in instructing MA to take custody of the Vehicle.

56. MA acted under color of law in taking custody of the Vehicle at the behest of the Butler police, and in detaining it thereafter.

57. MA acted under color of law in asserting a de facto possessory lien in the Vehicle which it argued took priority over HLT's ownership interest in the Vehicle. Butler benefited from MA's assertion of this de facto possessory lien by obtaining MA's services without monetary consideration, for which it otherwise would have had to compensate MA with money.

58. Neither Butler nor MA obtained a warrant or other court order permitting the towing and detention of the Vehicle. Neither Butler nor MA had a valid exception to the warrant requirement that governs the towing, detention, and imposition of a de facto lien in the Vehicle.

59. Neither Butler nor MA provided HLT or any other person or entity, with a hearing before a neutral decisionmaker regarding (a) the towing of the Vehicle, (b) the continued detention of the Vehicle, or (c) the imposition of a de facto lien in the Vehicle in favor of MA (to compensate MA for the services it rendered to Butler).

60. Because neither Butler nor MA provided HLT with a hearing on these actions, neither provided HLT with "notice" in the constitutional due-process sense. What notification was provided to HLT was woefully late (339+ days after the tow) and does not constitute notice for the purposes of due process, since it contained a set of unilateral demands rather than information about any meaningful opportunity to be heard.

61. Butler and MA each handled the Vehicle in accordance with their regular policies, customs, and/or practices for vehicles towed and stored under circumstances similar to those leading to the towing and storage of the Vehicle

62.     Neither Butler nor MA have procedures for obtaining warrants or other court orders authorizing their actions as to vehicles towed and stored under circumstances similar to those leading to the towing and storage of the Vehicle.

63.     Neither Butler nor MA have procedures for providing notice or a hearing relating to their actions as to vehicles towed and stored under circumstances similar to those leading to the towing and storage of the Vehicle.

64.     Through the aforementioned joint enterprise, and pursuant to the aforementioned policies, customs, and/or practices, Butler and MA acted jointly under color of law to meaningfully interfere with HLT's interests in the Vehicle without securing a warrant and without a valid exception to the warrant requirement, resulting in a violation of the United States' Constitution and/or the New Jersey Constitutional protections against freedom from unreasonable seizures.

65.     Through the aforementioned joint enterprise, and pursuant to the aforementioned policies, customs, and/or practices, Butler and MA acted jointly under color of law to deprive HLT of its protected property interest in the Vehicle without due process of law, resulting in a violation of the United States' Constitution and/or the New Jersey Constitutional protections against freedom from deprivations of property without due process of law.

66.     Through the aforementioned joint enterprise, and pursuant to the aforementioned policies, customs, and/or practices, Butler and MA acted jointly under color of law to take HLT's property for a public purpose without just compensation, in violation of the United States' Constitution and/or the New Jersey Constitutional protections against takings of property without just compensation.

67. As a result of all of the foregoing, HLT was damaged, in amounts including but not limited to the lost value of the Vehicle, HLT's lost ability to use the Vehicle, and/or the stream of payments to which HLT was entitled under its lease agreement relating to the Vehicle.

68. HLT was also damaged in all amounts permissible to be recovered pursuant to 42 U.S.C. § 1988(b), namely, HLT's attorneys' fees for being forced to prosecute this action.

69. MA and Butler's conduct was contrary to well-settled constitutional law, and so shocks the conscience, that HLT is also entitled to punitive damages in accordance with both New Jersey and Federal law.

WHEREFORE, Honda Least Trust prays for judgment against Defendants Malanga's Automotive and Butler Township for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## FIFTH COUNT
### (*Tortious Interference*)
### (*as against MA*)

70. HLT incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

71. MA wrongful actions as set forth above constitute a knowing and intentional tortious interference with HLT's contractual relations and/or prospective economic advantage with respect to the Vehicle.

72. HLT has suffered, and continues to suffer, damages as a result of MA actions.

**WHEREFORE**, HLT prays for judgment against Defendant MA for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## SIXTH COUNT

### (*Unconscionable Commercial Practices and/or per se administrative regulation violation of the Consumer Fraud Act, N.J.S.A., 56:8-1, et seq. and Administrative Rules of the Division of Consumer Affairs, § 13:45A-26C.2—Deceptive Practices for Automotive Repairs*) (*as against MA*)

73. HLT incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

74. Violation of any of the Administrative Rules of the Division of Consumer Affairs constitutes a violation of the New Jersey Consumer Fraud Act ("CFA").

75. Administrative Rules of the Division of Consumer Affairs provides that an automotive repair dealer may not commence work without obtaining specific written authorization from the customer, may not commence work without providing written estimates meeting certain criteria, must provide the customer with certain receipts, invoices, and other paperwork, and imposing other specific requirements. See N.J.A.C. § 13:45A-26C.2.

76. The same section prohibits "making or authorizing in any manner or by any means whatever any statement, written or oral, which is untrue or misleading, and which is known. or by which the exercise of reasonable care should be known, to be untrue or misleading." Id.

77. Attempts by MA to hold HLT responsible for alleged amounts due to MA relating to the Vehicle without having obtained appropriate authorization, without having provided the appropriate written estimates, without providing the appropriate receipts, invoices and other paperwork, and without otherwise complying with N.J.A.C. § 13:45A-26C.2 resulted in MA committing various *per se* violations of the CFA.

78. MA statements to HLT representatives regarding HLT's liability to MA constitute per se violations of the same provision, because it is false as a matter of law that HLT would be liable for the monies demanded by MA.

79.      MA conduct resulted in per se violations of the CFA, for which MA is liable under CFA, N.J.S.A. 56:8-1, et seq.

80.      Attempts by MA to hold HLT responsible for the repairs, and MA withholding of possession of the Vehicle from HLT, constituted an unconscionable commercial practice which violated other provisions of the CFA.

81.      HLT constitutes a consumer with standing to raise these claims under the CFA.

82.      MA violations of the CFA caused an ascertainable loss to HLT for which MA is liable, namely, lost value of the vehicle, lost income stream from lease payments of the vehicle, lost use of the vehicle, and other damages.

**WHEREFORE**, HLT pray for judgement against Defendant, MA, for actual damages, consequential damages, punitive damages, fees and costs of suit, and pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-19, treble damages, counsel fees, interest and costs of suit, and for such other and further relief as the Court deems just and proper.

**NORRIS McLAUGHLIN, P.A.**
*Attorneys for Plaintiff Honda Lease Trust*


By:_____ /S/ *Nicholas A. Duston* _____
        NICHOLAS A. DUSTON, ESQ.

DATED: July 14, 2022

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that pursuant to R. 4:25-4, the undersigned is hereby designated as trial counsel.

**NORRIS McLAUGHLIN, P.A.**
*Attorneys for Plaintiff Honda Lease Trust*


By:_____*/S/ Nicholas A. Duston*_____
　　　　NICHOLAS A. DUSTON, ESQ.

DATED: July 14, 2022


## CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify that, to my knowledge, the matter in controversy is not the subject of any other action in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. I further certify that, to my knowledge, no other party should be joined in the within action.

I further certify that Confidential Personal Identifies have been redacted from documents now submitted to the Court and will be redacted from all documents in the future, in accordance with R. 1:38-7(b).

**NORRIS McLAUGHLIN, P.A.**
*Attorneys for Plaintiff Honda Lease Trust*


By:_____*/S/ Nicholas A. Duston*_____
　　　　NICHOLAS A. DUSTON, ESQ.

DATED: July 14, 2022