NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HONDA LEASE TRUST, | Civil No.: 22-cv-4862 (KSH) (CLW) |
| *Plaintiff*, | |
| v. | |
| BUTLER TOWNSHIP and MALANGA'S AUTOMOTIVE, | |
| *Defendants*, | |
| and | |
| MALANGA'S AUTOMOTIVE, | **OPINION** |
| *Defendant/Third-Party Plaintiff*, | |
| v. | |
| VINCENT MEDINA, | |
| *Third-Party Defendant*. | |

**Katharine S. Hayden, U.S.D.J.**

**I.    INTRODUCTION**

In July 2020, Butler Township police officers conducted a traffic stop of a 2018 Honda Civic and discovered that the driver had no valid license, registration, or insurance. The police impounded the Honda Civic, directed a towing company, Malanga's Automotive ("Malanga"), to tow and store it, and told the driver where it was going. As it turned out, the car was leased, and Malanga failed to notify the record owner, plaintiff Honda Lease Trust ("Honda"), of the car's whereabouts for 11 months after the impounding. Malanga then demanded thousands in towing

and storage fees as a condition of releasing the car to Honda.  Frustrated by its efforts to have the car released, Honda ultimately sued Malanga, and later added Butler Township as a defendant.

Nearly two years into the lawsuit, Malanga agreed to release the car to Honda in settlement of Honda's claims against it.[1]  However, Honda continues to pursue its claim against the Township, seeking a declaration that its policies governing the towing and storage of vehicles violate Honda's constitutional rights, as the Honda Civic's titled owner, under the Fourth, Fifth, and Fourteenth Amendments.  Before the Court are the parties' cross-motions for summary judgment directed to that claim.

## II.    FACTUAL BACKGROUND

On July 21, 2018 Vincent Medina leased the Honda Civic from an unknown lessor who forthwith assigned the lease to Honda.  (D.E. 20, Final Pretrial Order ("FPTO") § 5, ¶¶ 1-2; D.E. 23-3, Plf. Stmt. of Undisputed Material Facts ("SUMF") ¶¶ 1-2.)[2]  The New Jersey Department of Motor Vehicles issued title listing Honda as the owner on August 1, 2018.  (D.E. 23-3, Plf. SUMF ¶ 3.)

Medina failed to make any payments on the lease, including the first one, which was due on August 22, 2018.  (*Id.* ¶¶ 4-5.)  Under the lease terms, Medina's default entitled Honda to immediate possession of the car.  (*Id.*)  Notwithstanding, Medina continued to operate the car for two years without making any payments.  (*See* D.E. 28-3, Def. Watts Decl., Ex. H (Donahue Dep.) 13:9-14:9.)

---

[1] The third-party defendant, the driver Vincent Medina, is out of the case inasmuch as he was a third-party defendant brought in by the settling defendant, Malanga.
[2] Unless otherwise indicated, citations to the final pretrial order or the plaintiff's statement of undisputed materials facts are factual assertions that are stipulated, admitted, or otherwise undisputed.

On July 11, 2020, Medina was pulled over by Butler Township police officers, who charged him with driving with a suspended license, suspended registration, and no insurance, and they issued him a summons. (D.E. 23-3, Plf. SUMF ¶¶ 6-7.) The police department directed Malanga as one of its three official towing company partners to tow the car away and store it. (D.E. 20, FPTO § 5, ¶¶ 3, 4, 8; D.E. 23-3, Plf. SUMF ¶¶ 8-9, 36.) The police advised Medina where the car would be taken. (D.E. 20, FPTO § 5, ¶ 8; D.E. 28-3, Def. Watts Decl., Ex. T, Resp. 11.)

When a car is impounded, the Township's ordinance, § 216-1 to -18 (the "Ordinance") (D.E. 23-5, Plf. Duston Decl., Ex. I), and its police department's standard operating procedures (the "SOP") (*Id.*, Ex. H) come into play, and it is undisputed that both were followed here. (D.E. 20, FPTO § 5, ¶ 8; D.E. 23-3, Plf. SUMF ¶ 30.) In essence, when police officers impound a car from the roadway, they "are required to complete a towed/impounded vehicle form indicating where the vehicle was impounded, owner's information, towing company, and the reason for the tow/impound," and "[t]he driver who was issued the summons is then advised where the vehicle is located and what is required to retrieve it." (D.E. 23-3, Plf. SUMF ¶ 33; *see also* SOP § VII; D.E. 28-4, Def. Hammonds Decl., Ex. i (incident report).)

The Butler Township ordinance for "Abandoned or unclaimed vehicles" requires contractors like Malanga to notify car owners within seven days of an impounding if the car is not removed:

> The Police Department shall be responsible for notifying the owner of an abandoned vehicle towed under this chapter that his or her vehicle has been towed to the impound area. In the event that a towed vehicle is not removed within seven days by the owner, the towing company shall be responsible for notifying the Police Department of said situation. Failure of the contractor to notify the Police Department as stated herein shall limit the storage charge to seven days only. Thereafter, it shall be the obligation of the

3

> contractor to contact the owner or operator of a stored vehicle and to furnish proof to the Department that such attempt has been made. Failure to notify the owner or operator shall cause the storage charges to end at 30 days. After an attempt to make contact or if contact is made, storage charges will begin again for another 30 days. This procedure shall be followed until storage fees reach a maximum of 90 days.
>
> (Ordinance § 216-16.)

The parties are in accord that Honda learned for the first time that the car was impounded and sitting on Malanga's lot when it got an "abandoned vehicle" letter from Malanga on June 23, 2021. (D.E. 20, FPTO § 5, ¶¶ 5-6; D.E. 23-3, Plf. SUMF ¶¶ 13-14.) The letter, titled "New Jersey Motor Vehicle Commission Abandoned Vehicle on Private Property 90-day Notice," told Honda that "[a] vehicle is deemed to be abandoned if it is left on private property without the consent of the owner" and that Malanga was "notifying you of [its] intent to sell the vehicle unless you and/or the lienholder reclaim possession of the vehicle within 90 days of this letter, upon payment of the reasonable costs of removal and storage of the vehicle, and the expenses incurred . . . ." (D.E. 23-3, Plf. SUMF ¶¶ 14, 16.)

On June 28, 2021, Honda contacted Malanga about getting the car back. (D.E. 20, FPTO § 5, ¶ 7; D.E. 23-3, Plf. SUMF ¶ 17.) Malanga told Honda it would need to pay $26,199.16 in towing and storage fees. (D.E. 20, FPTO § 5, ¶ 7; D.E. 23-3, Plf. SUMF ¶ 18.) It also required a formal police release form, pursuant to the Township ordinance § 216-14 and New Jersey law. (D.E. 20, FPTO § 5, ¶ 7; D.E. 23-3, Plf. SUMF ¶ 20; D.E. 28-2, Def. Stmt. of Material Facts in Dispute ("SDMF") ¶ 20.) After some negotiations, Honda agreed to pay a reduced rate of $14,000 in exchange for the car's release. (D.E. 20, FPTO § 5, ¶¶ 7, 9; D.E. 23-3, Plf. SUMF ¶ 17; D.E. 28-1, Def. Counterstmt. of Undisputed Material Facts ("CSUMF") ¶ 10.)

Honda then contacted the Butler Township police department for a release form. (D.E. 23-3, Plf. SUMF ¶ 22.) The Township's policies and New Jersey law require proof of insurance and registration for the release of a car towed by the police. (*Id.*; *see* Ordinance § 216-14; N.J.S.A. 39:3-40.6.) In a July 27, 2021 email, a police department representative, Rebecca Hammonds, told Honda that "[s]ince the car was impounded due to motor vehicle reasons[,] I am going to need you to provide us with a current registration and insurance for the vehicle. Once I get that I'll send over the release form." (D.E. 23-3, Plf. SUMF ¶ 22; *see* D.E. 23-4, Plf. Donahue Decl., Ex. 6 (email exchange).)

At that point, Honda consulted an attorney and ultimately sued Malanga in state court in December 2021. (D.E. 23-3, Plf. SUMF ¶ 24; D.E. 1, Ex. A.) By August 30, 2021, well before suit commenced, the Township had agreed to waive the registration and insurance requirements because Honda did not intend to operate the Honda Civic on the road. (D.E. 23-3, Plf. SUMF ¶¶ 23, 25; *see* D.E. 28-4, Def. Hammonds Decl., Ex. v (email notifying Honda that it could pick up the release form and take the car away from Malanga's lot).)

On October 29, 2021, Honda's counsel wrote Malanga demanding the "immediate release" of the car without payment because "[Honda] is not obligated to pay you storage fees to regain possession of the Vehicle" and "New Jersey law does not permit you to retain possession of the Vehicle as against a lessor . . . based on a claim you are owed storage fees." (D.E. 23-3, Plf. SUMF ¶ 26; *see* D.E. 23-5, Plf. Duston Decl., Ex. G (counsel letter to Malanga).) Malanga refused to release the car to Honda without payment. (D.E. 20, FPTO § 5, ¶ 11; D.E. 23-3, Plf. SUMF ¶¶ 27-28.)

## III. PROCEDURAL HISTORY

5

On December 8, 2021, Honda filed a complaint in state court against Malanga, asserting replevin (count 1), conversion of property (count 2), tortious interference with a contract (count 3), and unconscionable commercial practices under the New Jersey Consumer Fraud Act (count 4). (D.E. 1, Ex. A (original complaint).)

On July 14, 2022, Honda filed an amended complaint adding Butler Township as a defendant. (D.E. 1, Ex. B (amended complaint).) It continued to assert the same four claims against Malanga and added a count against both the Township and Malanga under 42 U.S.C. § 1983 alleging violations of the Fourth, Fifth, and Fourteenth Amendments. Honda seeks payment of actual damages, consequential damages, punitive damages, and attorneys' fees and costs.

On August 2, 2022, with the Township's consent, Malanga removed the case to this Court based on federal question jurisdiction. (D.E. 1.) After the conclusion of discovery, the parties submitted a final pretrial order to Magistrate Judge Waldor. (D.E. 20.) As of the filing of the final pretrial order on September 12, 2023, Malanga still retained possession of the Honda Civic. (D.E. 20, FPTO § 5, ¶ 11.) It offered, however, during a conference held on that date, to return the car to Honda in settlement of Honda's claims against it. (D.E. 23-3, Plf. SUMF ¶ 28; *see also* D.E. 23-5, Plf. Duston Decl. ¶ 10.) A few days later, Honda accepted that offer. (D.E. 23-5, Plf. Duston Decl. ¶ 10.) Honda did not, however, inform the Court of the settlement at that time, and it continued to pursue its claim against the Township, moving for summary judgment against it on October 28, 2023. (D.E. 23.) In a corrected brief filed on November 2, 2023 (D.E. 25), Honda noted in passing that it "remains in the process of retrieving the vehicle pursuant to [the] *settlement with Malanga's*." (D.E. 25, Def. Mov. Br. at 38 (emphasis added).) The following day, November 3, Honda provided formal notice to the Court of its settlement with Malanga. (D.E. 26.)

Notwithstanding that it had settled with Malanga, Honda continued to litigate its motion, in which it frames the count against the Township as a "quintessential summary judgment case," arguing "[t]here are no genuine disputes of material fact surrounding what happened to the vehicle, nor Butler's regular policies and practices" and "[t]he parties disagree solely on the legal consequences of these undisputed facts." (D.E. 25, Plf. Mov. Br. at 2.) Honda seeks a declaration that the Township's policies and customs for impounding cars are unconstitutional because they "do not provide sufficiently prompt notice to all holders of property interests in seized vehicles"; they permit seizure of cars "unreasonably and beyond any legitimate exception to the warrant requirement"; and they provide a possessory lien as compensation to towing companies like Malanga, which is "[in] effect an uncompensated taking." (*Id.* at 39.)

On December 1, 2023 the Township opposed and filed a cross motion for summary judgment (D.E. 28), arguing that Malanga, not the Township, is solely responsible for Honda's alleged losses and that the Township's towing and storage policies are not constitutionally deficient. Both parties filed replies in support of their respective motions. (D.E. 29, 32.)

## IV. STANDARD OF REVIEW

The same standard governs each side's motion for summary judgment. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). That is, the motion should only be granted if the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The first part of the standard concerns whether there is a "genuine" dispute (meaning a reasonable factfinder could find for the non-movant) and whether the factual assertions are "material" (meaning they might affect the outcome of the case). *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018); *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up). The second part of

the standard—the critical part here—is whether the movant is entitled to judgment as a matter of law. "If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Goldenberg v. Indel, Inc.*, 2012 WL 2466567, at *3 (D.N.J. June 27, 2012) (Simandle, J.) (citing *Iberia Foods Corp. v. Romeo Jr.*, 150 F.3d 298, 302 (3d Cir. 1998)).

## V. DISCUSSION

Examining Honda's complaint, the remaining count that these motions address is count 4, which is brought under 42 U.S.C. § 1983 with the description:

> ***(Deprivation of Property Without Due Process of Law)***
> ***(Deprivation by Unreasonable Seizure)***
> ***(Taking without Just Compensation)***
> ***(as against all defendants)***

"It is well-settled that a municipality may be held liable under § 1983 only if its official policy or custom causes a constitutional injury." *Covington v. Twp. of Hillside*, 2021 WL 1186761, at *5 (D.N.J. Mar. 29, 2021) (Martinotti, J.) (citing *Monell v. N.Y. Dep't Soc. Servs.*, 463 U.S. 658, 694 (1978)). A "policy" exists when a decisionmaker "issues an official proclamation, policy, or edict," and a "custom" exists when a course of conduct is "not authorized by law" but is "so permanently and well-settled as to virtually constitute law." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009). A § 1983 plaintiff must show that the municipality adopted a policy or custom that "facially violate[s] federal law" or was "deliberately indifferent" to the known or obvious consequence of a constitutional violation. *Tarapchak v. Cty. of Lackawanna*, 739 F. App'x 172, 177-78 (3d Cir. 2018) (cleaned up). The plaintiff must also show that the policy or custom was the "moving force" behind the injury alleged. *Id.*

Honda asks the Court to enter a declaratory judgment, framing the alleged constitutional violations as arising from the Township's policies of "not provid[ing] prompt notice to all holders

8

of property interests in seized vehicles" in violation of the due process clause of the Fourteenth Amendment; "seiz[ing] vehicles unreasonably and beyond any legitimate exception to the warrant requirement" of the Fourth Amendment; and "effect[ing] an uncompensated taking" under the Fifth Amendment by "prov[iding] a possessory lien to Malanga's to compensate Malanga's for services rendered to Butler." (D.E. 25, Plf. Mov. Br. at 39.) The Court's authority to issue declaratory judgments extends to "case[s] of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Following the resolution of Honda's claims against Malanga and Malanga's agreement to release the car to Honda, the actual, current controversy before the Court is narrower than Honda's framing of it. The question is whether Honda is entitled to summary judgment as a matter of law that the Township's policy of turning over an impounded vehicle to a towing company after notifying a driver and requiring the towing company to identify and notify the actual owner within seven days is unconstitutional. For the reasons discussed below, it is not.

   *a. Due Process*

Honda alleges two due process violations under the Fourteenth Amendment—deprivation of its rights to (1) notice, and (2) a hearing. Honda argues the Township's policies are deficient because they do not require Township officials to notify car owners before or shortly after a car is towed by a private company at the direction of the police. Honda also argues the Township's policies deprive car owners in Honda's position of an opportunity to be heard before a car is turned over to a towing company or before conditions are placed on its release.

The Supreme Court has long held that the due process clause requires individuals to "receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). The parties do not dispute that, as a lessor and the vehicle's owner, Honda had a known property interest in the Honda Civic.

9

At issue is whether the Township's policy deprived Honda of its due process rights to notice and a hearing.

In determining what process is due, the Court balances the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). They are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011).

   1. Notice

The first *Mathews* factor weighs in Honda's favor; as the car's owner, Honda has a property interest in it. But the second and third factors weigh in favor of the Township.

The Township's policy is to call for a car to be towed when it is unregistered, uninsured, and driven by an unlicensed driver. The risk of erroneous deprivation under those circumstances, where the determination of illegality is "pretty cut and dried," is minimal. *Shaheed v. City of Wilmington*, 2022 WL 16948762, at *6-7 (D. Del. Nov. 15, 2022) (where plaintiff's car was towed for being illegally parked, "the risk of an erroneous deprivation is minimal" because "[t]he determination that a car is illegally parked is pretty cut and dried."). Additionally, the policy is to notify the driver—who is present on the scene—and to turn over the car to a private towing company with the requirement that the company—which at that point has possession of the car— must notify the owner if the car is not retrieved within seven days. (*See* Ordinance § 216-16.) This presents a low risk of due process deprivation, particularly because the towing company has a monetary incentive to comply. (*See id.* (capping fees if notice is not provided).) The Court is

persuaded by the Township's argument that once the car is turned over to a private towing company like Malanga, the police department no longer physically possesses the car or otherwise knows its status. (D.E. 32, Def. Reply Br. at 10.)

As the Township argues, its policies protect car owners' rights to prompt notice by requiring police officers to notify the driver—which the officers did here—and by requiring and incentivizing the contracted towing company to notify owners within seven days if the impounded vehicle is not removed (*see* Ordinance § 216-16)—which Malanga *did not do* here. The Butler Township police are not the moving force, when the towing company takes the car away, that separates car and owner. The towing company, with its obligations and its incentive of getting payment, is. Thus, the moving force behind Honda's failure to receive notice was *not* the Township's policies, but rather Malanga's failure to abide by them.

Under the third *Mathews* factor, the police department has a strong interest in protecting public safety and property by contracting with private towing companies to remove uninsured and unregistered vehicles from the road. *See Delaware v. Prouse*, 440 U.S. 648, 658 (1979) (recognizing that states have a "vital interest" in keeping dangerous, unregistered, and uninsured vehicles off the road); *Shaheed*, 2022 WL 16948762, at *6 (recognizing a city's "strong" interest in towing illegally parked cars from its streets). The alternative would be to leave the vehicles abandoned on the road, which would pose an unnecessary risk to public safety, or to have the police department tow and store the vehicles itself, which has not been shown to be feasible or practical here. As the Township argues, "[i]f Butler's ordinances did not allow for towing contractors such as Malanga's to collect fees" for towing vehicles at the direction of the police, "towing contractors would refuse to contract with Butler or Butler would be financially burdened with the expenses and administrative obligations directly." (D.E. 28, Def. Opp. Br. at 20.) For

that reason, the Township contracts with towing companies and, in turn, requires them to contact a car owner. As set forth in *City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999), a case that Honda cites, due process requires police officers to take "reasonable" steps to give notice that the property has been taken. Honda has not shown that the Township's arrangement with towing companies like Malanga is unreasonable or offends the mandates of due process.

## 2. Opportunity to be heard

In arguing that the Township's policies deprive it of its right to a hearing, Honda relies heavily on two nonprecedential cases that are inapplicable here[3]—*Am. Honda Fin. Corp. v. Twp. of Aston*, 546 F. Supp. 3d 371, 374 (E.D. Pa. 2021) and *Am. Honda Fin. Corp. v. City of Revere*, 471 F. Supp. 3d 399, 401 (D. Mass. 2020). *Aston* involved a police department's dishonesty and forgery in completing abandoned vehicle forms, 546 F. Supp. 3d at 375-76, and Honda has not shown any dishonest policy or behavior here. *Revere* involved a town policy permitting towing companies to *auction* abandoned vehicles without providing notice to lienholders. 471 F. Supp. 3d at 402. Here, the Township never sought to auction or sell the Honda Civic (D.E. 28-2, Def. SDMF ¶ 16), and even if it had, its policies would have required notice before any such sale (*see* Ordinance § 216-17 (requiring the sale of an impounded vehicle to "be in accordance with New Jersey State Law"); *see also* N.J.S.A. 39:3-29.1a(b)(1) ("The municipality shall give notice of the

---

[3] This is but one example of Honda's frequent reliance on caselaw that is, upon examination, inapplicable or otherwise unpersuasive. In its moving brief, Honda cites cases that are not relevant because they involve vehicles or property seized as evidence in a criminal prosecution, *see United States v. Premises Known as 608 Taylor Ave., Apartment 302*, 584 F.2d 1297 (3d Cir. 1978); *City of W. Covina v. Perkins*, 525 U.S. 234 (1999); *TD Auto Fin. LLC v. Cnty. of Putnam*, 2023 WL 6295116 (S.D.N.Y. Sept. 27, 2023). Honda also has cited to cases that are readily factually distinguishable, *see Harrell v. City of N.Y.*, 138 F. Supp. 3d 479 (S.D.N.Y. 2015); *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005); *Johnson v. Bradshaw*, 772 F. Supp. 501 (D. Nev. 1991), *aff'd*, 5 F.3d 537 (9th Cir. 1993).

sale by certified mail to the registrant of the motor vehicle and to the holder of any security interest . . . .")).

New Jersey law affords car owners in Honda's position the opportunity to be heard in various ways. *See* N.J.S.A. 56:13-1 to -23 (the Predatory Towing Act, along with its corresponding regulations, addressing the nonconsensual towing of motor vehicles authorized by law enforcement officers, permitting owners and operators of such vehicles to file a dispute with the Division of Consumer Affairs to challenge the towing company's fees, and giving the Director of the Division of Consumer Affairs the authority to determine if a towing company's fees are reasonable); N.J.S.A. 39:4-56.6 (the Abandoned Vehicle Act, permitting vehicle owners to make a claim or challenge removal and storage costs before a vehicle is deemed "abandoned" and sold at public auction); N.J.S.A. 2A:44-21 to -26 (the Garage Keeper's Act, permitting a vehicle owner to "bring an action for possession" in state court if the owner believes the garage keeper's storing and maintenance fees are "excessive").

Cases in this circuit support the Township's position that the police department was not required to hold a pre-deprivation hearing before turning the car over the Malanga. *See Abernathy v. City of Pittsburgh*, 795 F. App'x 85, 87 (3d Cir. 2020) (granting summary judgment for the city because a pre-deprivation hearing before the car was deemed abandoned and towed would have been impractical and a Pennsylvania law similar to New Jersey's Abandoned Vehicle Act provided an adequate post-deprivation opportunity to request a hearing); *Shaheed*, 2022 WL 16948762, at *6 (concluding that where there is an "adequate post-deprivation remedy, due process does not require the city to provide a car owner with a hearing before it tows the owner's car from its streets"). The Township points to the substantial fiscal and administrative burdens that a pre-deprivation hearing would require, and argues, persuasively, that to hold otherwise would require

13

it to "essentially establish another version of its Municipal Court . . . for traffic violations." (D.E. 32, Def. Reply Br. at 10.)

Additionally, the Township did not place "conditions" on the car's release—Malanga did. The Township points out that once it learned the Honda Civic was still being stored in Malanga's lot as of August 2021, it went out of its way to help Honda retrieve the car *without condition* by promptly waiving the requirement that Honda provide proof of insurance and registration and making the police release form available for pickup over two years before Honda filed its summary judgment motion. (*See* D.E. 28-4, Def. Hammonds Decl. Ex. v.)

Honda has not established that it is entitled to judgment as a matter of law that the Township's policy of contracting with a towing company to impound an unregistered and uninsured car after a roadside stop, notifying the driver of that car, and requiring the towing company that is holding the car to contact the owner within seven days offends the mandates of the due process clause.

### b. Warrantless Seizure

Honda argues the Township violated the Fourth Amendment by seizing the Honda Civic without a warrant. The Township counters that the seizure falls squarely within the community caretaking exception to the warrant requirement, which permits police officers to remove and impound vehicles "that impede traffic or threaten public safety and convenience." *United States v. Smith*, 522 F.3d 305, 313 (3d Cir. 2008) (cleaned up).

The community caretaking exception "recognizes that the police perform a multitude of community functions apart from investigating crime," including "aid[ing] those in distress, combat[ing] actual hazards, prevent[ing] potential hazards from materializing and provid[ing] an infinite variety of services to preserve and protect public safety." *Id.* (cleaned up). The Third

14

Circuit has held that police "impoundments of vehicles for community caretaking purposes are consonant with the Fourth Amendment so long as the impoundment decision was reasonable under the circumstances." *Id.* (cleaned up). In concluding that the police officer's impoundment was reasonable, the *Smith* Court considered the specific circumstances, including the fact that neither of the individuals arrested in the vehicle owned the car and the fact that the vehicle was at risk of being damaged or stolen if left in the area. *Id.*

The community caretaker exception applied here. When a vehicle violates N.J.S.A. 39:3-4 (requiring registration), N.J.S.A. 39:6B-2(b) (requiring insurance), and N.J.S.A. 39:3-40 (requiring a driver's license), Township police officers contact a towing company like Malanga to remove it from the road. Such a policy is protective of public safety, as contrasted with the alternatives—allowing an unlicensed driver to drive away with the unregistered and uninsured car, or leaving the car on the side of the road for an indefinite amount of time. The steps taken here also complied with New Jersey state law. *See* N.J.S.A. 39:3-4 ("Any police officer is authorized to remove any unregistered vehicle from the public highway to a storage space or garage, and the expense involved in the removal and storing of the vehicle shall be borne by the owner of the vehicle [or] the lessee of a leased vehicle."); N.J.S.A. 56:13-13(d) (stating that a nonconsensual towing may be "authorized by a law enforcement officer . . . in the actual performance of the officer's duties and as deemed appropriate for public safety"); *see, e.g.*, *Poku v. Himelman*, 2010 WL 5186174, at *3 (D.N.J. Dec. 15, 2010) (Pisano, J.), *aff'd*, 448 F. App'x 217 (3d Cir. 2011) (granting summary judgment for defendant police officer, concluding that his impoundment of a vehicle after checking the license plate and learning that its registration had been expired for three months was reasonable under the community caretaking exception, particularly in light of a New

15

Jersey statute authorizing police to remove any unregistered vehicle from the public highway to a storage space or garage).

Honda's argument that the impounding became unconstitutional when the Township allegedly gave Malanga a "possessory lien" in the car and attached "conditions" on the car's release is an unpersuasive framing of what really happened here. Under the community caretaker exception, the police officers conducted a traffic stop and directed Malanga to remove an unregistered, uninsured vehicle from the road pursuant to their duties to protect public safety under New Jersey law. Such a practice does not violate the Fourth Amendment warrant requirement.

### c. *Taking*

Honda argues the Township's actions "resulted in an uncompensated taking" under the Fifth Amendment because "Butler stopped the vehicle to enforce state law," requested Malanga's services to tow and store it, "compensated" Malanga for this service by "allowing (and expecting) Malanga to assert a possessory lien" over the car, and "insisted Malanga hold the vehicle until [the Township] gave its permission to release it." (D.E. 25, Plf. Mov. Br. at 27.) The Fifth Amendment prohibits a government entity from taking "private property . . . for public use, without just compensation." U.S. Const., amend. V.

As the Township argues, the policy to have towing companies like Malanga tow and store unregistered and uninsured vehicles in the situation presented here is not a "taking" "for public use." Rather, the police department's arrangement with Malanga to impound cars that violate New Jersey law is a valid exercise of police powers. The Supreme Court has long recognized that a governmental entity is "not . . . required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Mich.*, 516 U.S. 442, 452 (1996). Thus, "[p]roperty seized and retained

pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *Amerisource Corp. v. U.S.*, 525 F.3d 1149, 1153 (Fed. Cir. 2008); *see Hart v. Gordon*, 591 F. App'x 125, 129 n.19 (3d Cir. 2014) (cleaned up) ("[A] Takings Clause claim is a non-starter when property is retained or damaged pursuant to the police power."); *Zitter v. Petruccelli*, 213 F. Supp. 3d 698, 708-09 (D.N.J. 2016) (Hillman, J.) (cleaned up) ("[P]roperty seized and retained pursuant to the police power does not raise a Takings Clause claim.").

Here, the Honda Civic was not taken for public use; it was taken because its operation on the road violated several New Jersey laws. *See* N.J.S.A. 39:3-4 (requiring registration); N.J.S.A. 39:6B-2(b) (requiring insurance); N.J.S.A. 39:3-40 (requiring drivers to have a valid license). As discussed above, the police department impounded the car to further its role as a community caretaker, maintain public safety, and uphold traffic laws. Honda has not shown that the Township's policies permitted police officers to act outside the bounds of their police powers.

Honda challenges Malanga's ability to receive compensation according to a fixed fee schedule as set forth in the Township's policies, but it fails to supply any relevant authority supporting its conclusion that such an arrangement constitutes a taking. To the contrary, it is permitted by the New Jersey Garage Keeper's Act. *See* N.J.S.A. 2A:44-21 to -26; *Assocs. Commercial Corp. v. Wallia*, 211 N.J. Super. 231, 238 (App. Div. 1986) (deeming the Garage Keeper's Act constitutional).

Accordingly, Honda has not asserted a valid claim for a taking without just compensation.[4] Summary judgment must be granted in favor of the Township as a matter of law.

---

[4] To the extent Honda makes a series of arguments pertaining to the dispute between it and Malanga, notwithstanding the settlement of that dispute before the filing of its motion, the Court need not address them because they are moot.

## VI.     CONCLUSION

For the reasons set forth above, Honda's motion for summary judgment is denied and the Township's cross-motion for summary judgment is granted.  An appropriate order will enter.


Dated: June 28, 2024                                            /s/ Katharine S. Hayden
                                                                          Katharine S. Hayden, U.S.D.J.